**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAMION MARTIN,                           )
                                         )
    Appellant-Defendant,                 )
                                         )
        vs.                          )    No. 49A02-1206-CR-473
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1008-MR-63982

**March 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Damion Martin appeals his convictions for two counts of murder, felonies; one count of aggravated battery, as a Class B felony; and three counts of battery, as Class C felonies, following a jury trial. Martin presents a single issue for review, namely, whether the evidence is sufficient to support his convictions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of August 2, 2010, Barbara Johnson had a birthday party for Willie Battles at her home at 1268 West 32nd Street in Indianapolis. She lived there with her boyfriend Michael Harris and her three children. Barbara's mother, Prinsonia Johnson, bicycled to the house with her boyfriend, Charles May, and stayed to help with the party.[1]

Robin Jones arrived at the birthday party around 9:00 p.m. Kendall Hill was arriving at the party when Jones was leaving about an hour and a half later. Jones believed Hill had been involved in the unsolved murder of her cousin, Stevie McElwain, three years earlier. Hill and Jones argued about whether Hill had been involved, and Hill was angry that Jones had been telling other people of her belief regarding Hill's involvement.

Eventually, Jones left for a block party a few blocks away at 26th Street and White Street. The block party was in remembrance of LeRon Edwards, who had been killed a year earlier. Jones was still upset about her altercation with Hill and spoke loudly to "whoever [would] listen" about it. Transcript at 544. Jones eventually spoke with Terrell

---

[1] We use first names to distinguish between people who share a common last name.

2

Chatman, saying she wanted to get a gun and kill Hill. Chatman attempted to calm Jones. He was wearing a 9mm handgun in a holster and also had at the party an SKS rifle that holds twenty-five 7.62 rounds. He had planned to do a twenty-one gun salute for Edwards at the party. At one point, when Jones was behind Chatman, she grabbed his handgun from the holster. Chatman grabbed the gun back and told her to get her own gun.

Jones also told Devin Staten and Martin about her argument with Hill. Staten was wearing a red shirt, and Martin was wearing a black and white bandana and a yellow t-shirt with Edwards' photo on it. Martin told Jones to "stop crying and to watch the news and read the newspaper" the following day. Id. at 546.

Police came to the block party that night twice because of gunshots. Chatman did not fire any shots, but at some point Jones gave him a ride to his mother's house on 28th Street to hide the rifle there. When Jones arrived back at the block party, she saw Martin, Staten, and a third person she did not recognize. Martin and Staten had changed into "dark clothing." Id. at 552. Jones saw Tiffany Holifield give the keys to Holifield's mother's car, a Chrysler 300, to Martin. The Chrysler was silver-grey or light green but had a black front right quarter panel. Staten, Martin, and the third person got into the Chrysler and drove away.

Back at the 32nd Street birthday party, between midnight and 1:00 a.m., seventeen-year-old K.M., Barbara's daughter, saw a grey car with a "little piece" that was black drive by the party a couple of times. Id. at 808. As Shanon Gammons was leaving the party, she also saw Holifield's mother's Chrysler 300 drive past the house. Gammons

3

knew that car as one that Holifield often loaned out, had ridden in it herself, and recognized it in part from the black front right quarter panel. Gammons noted that the car was driving by very slowly. She saw Martin in the front passenger seat and Anton or Antwan Williams[2] in the back seat but did not see the driver.

After the car passed the house, the driver turned around and drove toward the house again and stopped. Barbara's son T.M. also saw a car "like a regular Charger" pull up in the street in front of the party. Id. at 762. Gammons noted that the occupants now wore masks and yelled that fact to the people at the party. The car stopped, and Martin, wearing all dark colors, exited on the passenger side holding a "chopper" or "big gun[.]" Id. at 1459. K.M. also saw the front passenger exit the vehicle, wearing a black bandana over his face, and he heard the person say, "no witnesses." Id. at 794.

Martin shot the "chopper" over the hood of the car toward the party, and the gun "let off a thousand rounds." Id. When the "chopper's" first rounds stopped, Gammons saw a handgun being shot out of the car's back window, and then Martin fired more rounds from the chopper. Gammons saw Barbara, Prinsonia, May, and others at the party fall. When the shooting stopped, Gammons did not see where the car drove.

Shortly after midnight on August 3, Officers Jeremy Lee, Dustin Toussing, and Scott Strietelmeier of the Indianapolis Metropolitan Police Department ("IMPD") were at the 26th Street block party when they heard "a barrage of rapid gunfire" north of them. The sound resembled that that would come from an assault rifle. The officers had previously been dispatched to the 32nd Street birthday party that evening and headed

---

[2] Anton and Antwan Williams are twins and Gammons could not determine which twin she saw in the car.

4

there to investigate the sound of shots fired. When they arrived they found several people at the party had been injured by gunfire, and two of the victims, Barbara and May, had died. Officers found more than forty spent 7.62x39-mm casings at the party, all manufactured by Wolf.

Martin did not return the Chrysler 300 that night directly to Holifield. Instead, he telephoned and informed her that he had left her car on Roache Street. When Holifield arrived at the car, she saw that it now had bullet holes and a flat tire. Unsure of what to do, Holifield telephoned her mother, the owner of the car, and asked her to report it stolen. Officers later recovered the Chrysler and found a burned black bandana in the front seat. They also found spent .40-caliber casings in the back seat, and DNA taken from the front passenger side door was consistent with Martin's DNA.

On August 5, officers executed a search warrant at Martin's residence. They found a gun box and instruction manual for a Ruger. Casings that would be left by a .40-caliber Ruger handgun would be consistent with those found in the back seat of the Chrysler 300. And inside a hole in the basement ceiling, officers recovered a 7.62x39mm cartridge manufactured by Wolf.

The State charged Martin with two counts of murder, felonies; one count of attempted murder, a Class A felony; one count of conspiracy to commit murder, a Class A felony; one count of aggravated battery, as a Class B felony; and three counts of battery, as Class C felonies. A jury trial was held, and the jury returned a verdict finding Martin guilty of two counts of murder, felonies; one count of aggravated battery, as a Class B felony; and three counts of battery, as Class C felonies. The trial court sentenced

Martin to sixty years for each murder, fifteen years for aggravated battery, and seven years for each count of battery, for an aggregate term of 135 years. Martin now appeals.

## DISCUSSION AND DECISION

When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

Martin contends that the evidence is insufficient to support his convictions. To prove the offense of murder, a felony, the State was required to show that Martin knowingly or intentionally killed another human being. See Ind. Code § 35-42-1-1(1). To prove the offense of aggravated battery, the State was required to show that Martin knowingly or intentional inflicted injury on a person that created a substantial risk of death. See Ind. Code § 35-42-2-1.5. And to prove the offense of battery, the State was required to show that Martin knowingly or intentionally touched another person in a rude, insolent, or angry manner, namely, shooting and injuring three people. See Ind. Code § 35-42-2-1.

Martin challenges the State's proof on the identity element of each offense. In other words, he contends that the State failed to prove beyond a reasonable doubt that

6

Martin was one of the masked gunmen who shot into the crowd at the 32nd Street birthday party. We cannot agree.

The evidence shows that Jones complained to Martin about her argument with Hill, in which she accused him of involvement in her cousin's death. In response, Martin told Jones to "stop crying and to watch the news and read the newspaper" the following day. Id. at 546. Martin had been wearing a yellow shirt and black-and-white bandana, but a short time later Jones saw that he had changed from his yellow shirt into dark clothing. She also saw him borrow the keys to Holifield's mother's Chrysler 300 and ride away with Staten and another man. The Chrysler 300 was well known in the neighborhood and often loaned out, and it was distinctive because it was a light color but had a black front right quarter panel.

Shortly after midnight, a light car with a black front right quarter panel containing three occupants drove slowly past the 32nd Street birthday party. Gammons recognized Martin in the front passenger seat. The car turned around and approached the party again, but this time the three occupants were wearing masks. The car stopped in front of the party, and the passenger in the front passenger seat exited. He was wearing dark clothing, was carrying a large gun or "chopper," and fired two series of rapid gunfire into the party crowd. The occupant of the back seat fired a hand gun out the window. When the gunfire ended, the front passenger re-entered the car, and the men drove away.

Martin later called Holifield and told her where to find her car. When Holifield found it, it was damaged by bullet holes and had a flat tire. Holifield had her mother report the car stolen. Officers later found the car, towed it, and examined it. They found

DNA matching Martin's on the front passenger door, a burned black bandana in the front seat, and a spent .40-caliber casing in the back seat. Officers also executed a search warrant on Martin's home. They found a box and a manual for a Ruger handgun, and in the basement ceiling they found a live 7.62x39mm shell manufactured by Wolf. The shell casings found at the scene of the crime were also from 7.62x39mm shells manufactured by Wolf. And while Martin was incarcerated on the instant charges, another cell block prisoner, Erick Williams, saw Martin watching a news piece on the shooting and heard another inmate say, "I don't see how they know who it is, we wore masks." Transcript at 1613. Williams was never housed with Antwan Williams or Staten, who were also charged for the shooting, but he was housed for a time with Martin and later identified Martin or another man as the speaker. The evidence and reasonable inferences from the same are sufficient to support Martin's convictions.

Still, Martin contends that the evidence is speculative. In particular, he challenges several aspects of the evidence. Most, such as the following arguments, amount to a request that we reweigh the evidence, which we cannot do. Wright, 828 N.E.2d at 905-06. For example, Martin admits that he had previously been in the Chrysler 300 but was not in it when the shooting occurred. He also asserts that there is no way to know when his DNA was left there. He points to evidence showing that he had been wearing a yellow shirt at the 26th Street party, not a dark shirt, and he argues that there was no direct evidence linking the ammunition and Ruger box and manual found at his home to the weapons that were used in the shooting. Because we cannot reweigh the evidence, Martin's arguments on these points must fail.

Martin also challenges the credibility of certain witnesses and evidence. In particular, he contends that Gammons had initially denied knowing the occupants of the car involved in the shooting. He also calls into doubt Williams' identification of Martin as the person who said "we wore masks" in response to a news story on the shooting aired at the jail. And he contends that alibi evidence shows he could not have been at the shooting. But, again, we cannot judge the credibility of witnesses. Id. Martin's contentions again must fail.

In sum, the evidence and reasonable inferences therefrom show that Martin was one of the shooters at the 32nd Street birthday party. As such, the evidence is sufficient to support his convictions for two counts of murder, felonies; one count of aggravated battery, as a Class B felony; and three counts of battery, as Class C felonies, and, therefore, we affirm Martin's convictions.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.